IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONNIE JAMES DENNISON, )<br>)<br>      Plaintiff, )<br>)<br> -vs- )<br>)<br>CAROLYN W. COLVIN, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>      Defendant. ) | Civil Action No. 13-1097 |

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Lonnie James Dennison ("Dennison") filed an application for a period of disability and disability insurance benefits based, in part, upon a cardiovascular disorder and depression. His claim was denied following a hearing and the Appeals Council denied his request for review. Dennison then filed this appeal under 42 U.S.C. § 405(g).

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [9] and [12]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [11] and [13]). Plaintiff has also filed a Reply Brief. (Docket No. [14]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting the Defendant's Motion for Summary Judgment and denying the Plaintiff's Motion for Summary Judgment.

### I. BACKGROUND

Dennison offers December 1, 2009 as his onset date for disability. (R. 24, 44) He was 44 years old at that time, having been born in 1965. (R. 140) He attended school through the eighth grade and spent approximately 23 years working as a welder. (R. 46-47) He reports

1

leaving that job for one less physically taxing. (R. 45) He then took a job managing a small bar / restaurant for a short period of time. (R. 45) He stopped working when that business failed.

As stated above, the ALJ denied Dennison's request for benefits. Specifically, the ALJ determined that Dennison retained the residual functional capacity to perform sedentary work with some restrictions. (R. 22-40) In light of those restrictions Dennison was unable to perform his past relevant work as a welder and the ALJ concluded that he was able to perform the requirements of jobs such as: surveillance system monitor, telemarketer and call out operator. (R. 35-36). Dennison appeals, urging that the ALJ's assessment of "residual functional capacity" is "infected with legal error." Specifically, Dennison contends that the ALJ failed to properly evaluate the medical evidence and that the ALJ erred in his evaluation of subjective complaints of pain.

## II. LEGAL ANALYSIS

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however,

2

the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

As stated above, Dennison attacks the ALJ's finding with respect to residual functional

capacity ("RFC").  He focuses more narrowly upon the ALJ's treatment of the medical evidence and upon credibility assessments. I will address each argument seriatim.

        1)        Evaluation of the Medical Evidence

Dennison objects to the manner in which the ALJ considered the medical evidence in the context of resolving RFC.  In particular, Dennison takes issue with the ALJ's handling of evidence from his treating cardiologist, Dr. Flores, his treating psychiatrist Dr. Kwiat and his therapist Susan Preston.  I approach Dennison's arguments in light of the longstanding case law within this Circuit that the report of a treating physician should be accorded greater weight than that of a non-examining consultant. *Brownawell v. Comm'r. of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). This is true particularly if that physician's treatment record or opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting*, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  Indeed, "[i]t is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence." *Moffatt v. Astrue*, 2010 U.S. Dist. LEXIS 103508 at * 6 (W.D. Pa. 2010).  If a "treating source's opinion as to the nature and severity of a claimant's impairments is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' it will be given 'controlling weight.'" *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726 at * 21 (D. Del. Aug. 22, 2014), quoting, 20 C.F.R. § 404.1527(c).That is, unless there is contradictory evidence, an ALJ may not reject a treating physician's opinion. An ALJ's own credibility judgments, speculation or lay opinion is not sufficient. *Wiberg*, 2014 4180726 *citing, Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

"Where there is a difference of opinion between a treating physician and a non-treating, non-examining physician, the ALJ is permitted to decide to whom to give greater weight, but 'cannot reject evidence for no reason or for the wrong reason.'" *Link v. Social Sec. Disability*,

Civ. No. 13-812, 2014 WL 3778320 at * 9 (W.D. Pa. 2014), *quoting, Smink v. Colvin*, 196 Soc. Sec. Rep. Serv., 563 (M.D. Pa. Nov. 19, 2003). Moreover, "[t]he law is clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, state agent opinions merit significant consideration. *See* SSR 96-6p ("Because State agency medical and psychological consultants … are experts in the Social Security disability programs, … 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] … to consider their findings of fact about the nature and severity of an individual's impairment(s) … .").

Bearing this legal framework in mind, I turn to Dennison's assertions. Dr. Flores was Dennison's treating cardiologist over a period of several years and opined that Dennison was disabled. (R. 226) Specifically, although he believed Dennison was capable of lifting 5-10 pounds occasionally, and carrying 5-10 pounds occasionally he indicated that Dennison would likely be absent from work as a result of impairments more than three times a month. (R. 240-241) He also stated that Dennison was incapable of tolerating even "low stress" jobs and suffered from depression as a result of his poor functional capacity. (R. 241) Nevertheless, he gave "little weight" to Dr. Flores's opinions. (R. 33)

The question before me, then, is whether the ALJ's decision is supported by substantial evidence of record. I find that it is. First, as stated above, a treating physician's opinion as to functional capacity is not binding upon an ALJ. *See Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). As such, the ALJ was not required to accept Dr. Flores's pronouncement that Dennison was "disabled". Further, I find substantial evidence of record supports the ALJ's conclusion that Dr. Flores's pronouncement of "disability" is at odds with his conservative treatment. By Dr. Flores's own admission, Dennison saw Dr. Flores only once every 3-6 months. (R. 348) There are no records suggesting that Dennison ever required surgery or hospitalization. At most, Dennison took medication and was subjected to a series of tests, all of

which ruled out cardiovascular disease as a cause of his extreme fatigue.

For instance, a cardiac catheterization indicated normal coronary arteries. (R. 212) During a March 30, 2010 visit, Dr. Flores observed that his chest was clear and that there were no signs of edema. (R. 218) Significantly, Dr. Flores "doubt[ed] that his fatigue is due to cardiovascular issues." (R. 218) In a July 14, 2011 letter, Dr. Flores noted:

> As you know, he has complained of dyspnea and fatigue for several years. Initially, he had mild left ventricular dysfunction that was secondary to hypertension. However, his left ventricular function has normalized with better blood pressure control and the most recent echocardiogram showed an ejection fraction of 60%. He had a prior cardiac catheterization that showed no coronary artery disease whatsoever and because I could not explain his dyspnea, I sent him for a cardiopulmonary exercise test that was performed by Dr. Steven Harris at UPMC Passavant. This demonstrated submaximal exercise without cardiac limitation to exercise primarily due to deconditioning. There was no ventilator limitation to exercise and no evidence of cardiovascular limitation to exercise.

(R. 342) Dr. Flores stated, "His major problem is depression and **I do not have any cardiovascular causes for his complaints**…." (R. 342) (emphasis added)

The absence of any cardiovascular disability is further demonstrated in the record by records from Dr. Mary Ellen Wyszomierski, a physician consultant who reviewed Dennison's file. She opined that Dennison's treatment "for his impairments has been essentially routine and conservative in nature." (R. 70) Dr. Wyszomierski opined that Dennison could perform sedentary to light work that involved lifting and / or carrying 20 pounds occasionally and 10 pounds frequently; standing and /or walking about 2 hours and sitting about 6hours in an 8 hour workday and doing occasional postural activities, with some limitations. (R. 68-70) As stated above, an ALJ can give greater weight to the opinion of a non-treating, non-examining physician. See *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726 at * 21 (D. Del. Aug. 22, 2014).

Though Dr. Flores may have been Dennison's treating physician for cardiovascular disease; he clearly stated that any disabling condition does not arise from a cardiovascular

perspective. Rather, he states that it arises as a result of depression. This is not within Dr. Flores's area of specialty and as such is not entitled to great deference. *See Leach v. Astrue*, 470 Fed. Appx. 701, 703 (10th Cir. 2012), citing, 20 C.F.R. § 404.1527(c)(5) and 416.927(c)(5); *Wilcox v. Comm'r. of Soc. Security*, 442 Fed. Appx. 438, 440 (11th Cir. 2011). Faced with the reports of two cardiologists, both of whom agree that Dennison had no disabling cardiac condition, and the report of one of those cardiologists, who opined that Dennison was disabled because of a mental health condition, I find no error in the ALJ's assignment of greater weight to the cardiologist who did not engage in opinions regarding mental health.

I turn next to the ALJ's handling of Dr. Kwiat. Dr. Kwiat prepared a Psychiatric / Psychological Impairment Questionnaire dated January 18, 2012 in which he declared Dennison "disabled". The records indicate that Dr. Kwiat first assessed Dennison on December 2, 2011 then had a session on January 11, 2012. (R. 344) Dennison urges that Dr. Kwiat is to be accorded "treating physician" status. The ALJ rejected such status given the infrequent treatment and also found that Dr. Kwiat's conclusion was inconsistent with the evidence of record.

Substantial evidence of record supports the ALJ's conclusions in this regard. First, Dr. Kwiat only saw Dennison on two occasions. Case law stands for the proposition that treating physicians' reports are given great weight where they are based upon continuing observations over a prolonged period of time. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) I agree with the ALJ that two visits one month apart does not amount to "a prolonged period of time." See Conrad v. Colvin, Civ. No. 13-204, 2014 WL 2980889 at * 5 (W.D. Pa. July 1, 2014) (affirming an ALJ's conclusion that a physician who treated the claimant on only one occasion did not have "the prolonged longitudinal basis for making statements about Plaintiff that a typical treating doctor normally possesses.") Further, Dr. Kwiat's opinion regarding disability is not supported by any test results. The Questionnaire reports a GAF of "35" but does not include any

7

information in support of this conclusion. Indeed, in response to the directive to "identify the laboratory and diagnostic test results which demonstrate and / or support your diagnosis" Dr. Kwiat responded "N/A." (R. 284) There is no documented evidence of suicidal ideation or psychosis associated with decompensation nor is there any evidence of inpatient care, hospitalization or emergency room treatment resulting from his depression. Further, as the ALJ notes, Dr. Kwiat's conclusion that Dennison had a GAF of "35" is at odds with his activities of daily living.[1] For instance, Dennison washes and dresses himself. (R. 50) He can prepare his own meals and clean up afterwards. He does his laundry as well. (R. 50) He drives once or twice a week and occasionally does grocery shopping. (R. 51) Dennison's own testimony indicated that he continued to work as a full time manager until that business closed. (R. 29, 32, 45) His condition did not preclude him from performing those duties; rather, he stopped work because the business failed. Additionally, as the ALJ notes, Dr. Kwiat's opinion is inconsistent with that of James Vizza, Psy.D, a physician consultant who worked with the State agency and reviewed Dennison's file. Dr. Vizza reviewed the records and concluded that Dennison had an affective disorder, but opined that it was not severe. (R. 67) As previously stated, an ALJ is permitted to give greater weight to the opinion of a non-treating, non-examining physician. *Link*, 2014 WL 3778320 at * 9. Because Dr. Kwiat's report is neither internally nor externally supported, I find the ALJ's discounting of his opinion to be appropriate.

Finally, I consider the ALJ's treatment of Ms. Preston's opinion. Susan Preston completed a Psychiatric / Psychological Impairment Questionnaire in which she opined that Dennison is "not able to work and requires ongoing psychiatric care." (R. 282) She found Dennison to have a GAF score of 50 and determined him to be moderately to markedly limited

---

[1] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR).

8

in all work-related mental activities. (R. 275-282) She also found him to be incapable of even "low stress" work and indicated that he would miss work more than three times a month. (R. 275-282)

The ALJ found Preston's opinion to be only "partially credible" and gave it little weight. (R. 34) Specifically, he noted that she is not an "acceptable medical source," that her treatment of Dennison has been brief, that her findings as to his limitations are inconsistent with the other medical record and that her opinion regarding his GAF is at odds with his activities of daily living. After careful review, I agree. According to SSR 06-03p, a counselor is not an "acceptable medical source." Rather, counselors and therapists are "other sources." *See* 20 C.F.R. § 404.1513(d).[2] Additionally, as the ALJ noted, Preston had only treated Dennison for two months at the time she completed her Questionnaire. Thus, her knowledge of Dennison was not gathered over a "prolonged period of time." Similarly, her findings as to the GAF score and his inability to work are, for the same reasons set forth above with respect to Dr. Kwiat, inconsistent with the opinion of Dr. Vizza and Dennison's activities of daily living and work history.

In sum, Dr. Flores's, Dr. Kwiat's and Ms. Preston's opinions were not entitled to "great weight". Their opinions are not well-supported by medically acceptable clinical and laboratory diagnostic findings. Further, they are inconsistent with other substantial evidence in this case. *See* 20 C.F.R. § 404.1527(c)(2)-(4). Moreover, Ms. Preston is not an "acceptable medical source" and Dr. Kwiat is not appropriately characterized as a "treating physician" given the length of time he treated Dennison. Similarly, though Dr. Flores opined that Dennison was disabled because of depression, his area of expertise is cardiology so any deference accorded his status as Dennison's "treating physician" must be tempered by the fact that mental health is

---

[2] "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p.

9

not within his area of expertise. Consequently, the ALJ's conclusion that Dennison was capable of sedentary work and his rejection of the opinions of Dr. Flores's, Dr. Kwiat's and Ms. Preston's, is affirmed.

    2)  Subjective Complaints

Finally, Dennison objects to the ALJ's findings regarding his credibility. It is well-established that the ALJ has the responsibility of determining a claimant's credibility. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p. Ordinarily, an ALJ's credibility determinations are entitled to great deference, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S. Ct. 1133, 43 L.Ed.2d 403 (1975).

After careful review, I find that the ALJ's credibility determinations are supported by substantial evidence of record. First, as set forth above, Dennison's statements to his medical treatment providers regarding the disabling nature of his conditions are not supported by clinical or diagnostic findings and they are at odds with his activities of daily living. Second, as the ALJ notes, Dennison's own work history belies his claims of disability. After working as a welder for more than 20 years, he began work as a full-time manager. (R. 32) Dennison admitted that he stopped working because his employer went out of business. (R. 35)

A reviewing court should "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess the witness's demeanor." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). There is no basis before me upon which to challenge the ALJ's credibility determinations.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LONNIE JAMES DENNISON, )
)
    Plaintiff, )
)
-vs- ) Civil Action No. 13-1097
)
CAROLYN W. COLVIN, )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

## ORDER OF COURT

THEREFORE, this 24th day of September, 2014, it is ordered that the decision of the ALJ is affirmed. The Defendant's Motion for Summary Judgment (Docket No.12) is granted and the Plaintiff's Motion for Summary Judgment (Docket No.9) is denied.

                      BY THE COURT:

                      s/ Donetta W. Ambrose
                      Donetta W. Ambrose
                      United States Senior District Judge